NOT FOR PUBLICATION

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |
|---|---|
| UNITED ASSOCIATION OF PLUMBERS & PIPEFITTERS LOCAL 322 OF SOUTHERN NEW JERSEY, individually and on behalf of all others similarly situated., <br><br> Plaintiff, <br><br> v. <br><br> MALLINCKRODT ARD, LLC, et al., <br><br> Defendants. | Civil No. 20-0188 (RBK/KMW) <br><br> **OPINION** |

**KUGLER**, United States District Judge:

Presently before the Court is Defendant Lisa Pratta's Motion for Attorney's Fees (Doc. No. 80). For the reasons set forth below, Defendant's Motion is **DENIED**.

**I.      BACKGROUND**

The present motion concerns whether sanctions in the form of attorney's fees are appropriate because the Plaintiff's claims against an individual Defendant were dismissed for being "extremely conclusory." We think not. Simply being on the losing side of a dispute does not give rise to the "exceptional circumstances" envisioned by Rule 11. Because we write primarily for the parties, we need not engage in an extensive discussion of the facts. Instead, a brief summary is provided below.

   **A.   Factual Background**

Plaintiff United Association of Plumbers & Pipefitters Local 322 of Southern New Jersey's ("Local 322"), a Taft-Harley union fund that provides health and welfare benefits to its

members and third-party payor, filed suit against Mallinckrodt, Cigna Corporation, Cigna Holding Company, and Lisa Pratta claiming they conspired to, among other things, dramatically inflate the price of the drug H.P. Acthar Gel ("Acthar").[1] (Doc. No. 40, FAC at ¶¶ 1, 3, 4, 7).

Mallinckrodt and its co-conspirators allegedly developed and employed a three-part strategy to inflate the drug price. (*Id.* at ¶ 7). First, Mallinckrodt restricted distribution of Acthar to Express Scripts by entering into an exclusive distribution agreement with its wholly owned subsidiary CuraScript. (*Id.* at ¶ 10). It also entered into an agreement with UBC, another wholly owned subsidiary of Express Scripts, to coordinate the sale, distribution, and reimbursement of Acthar. (*Id.*). With these agreements in place, Mallinckrodt implemented a distribution program known as "Acthar Support & Access Program" ("ASAP"). (*Id.* at ¶ 180). Under ASAP, the only way for a patient or physician to obtain Acthar is by completing an Acthar Start Form, affirming that the prescription is "medically necessary," and then faxing it to UBC. (*Id.* at ¶¶ 184, 187). Upon receipt of the form, UBC confirms the prescription and the patient's insurance coverage. (*Id.* at ¶ 185). CuraScript then delivers Acthar directly to the patient who in turn pays UBC. (*Id.*). Payments are then distributed to Mallinckrodt. (*Id.* at ¶ 189). This system enabled Mallinckrodt to bypass the prior authorization process used by third party payors, such as Plumbers Local 332, which required review and authorization of highly priced specialty medications before a script could be written and charged to the third-party payor. (*Id.* at ¶ 119).

Second, Mallinckrodt unilaterally, and jointly with UBC and CuraScript, increased the average wholesale price of Acthar from a mere $40 in 2001 to over $40,000 by 2018. (*Id.* at ¶¶ 207–208, 214, 220, 232, 241). Third, Mallinckrodt allegedly employed a series of marketing practices to artificially increase the demand for Acthar. It employed "Medical Science Liaisons,"

---

[1] The other named Defendants were wholly owned subsidiaries of Cigna Corporation and Cigna Holding Company.

which were highly trained sales employees, to promote Acthar to doctors for off label uses, cultivated Key Opinion Leaders—doctors who frequently prescribed Acthar and were paid by Mallinckrodt—to create data regarding Acthar's efficacy for off label uses, and subsidized patient's copayments by donating money to "patient assistance funds" which only distributed money toward copays for Acthar. (*Id.* at ¶¶ 266, 272, 274, 276, 282, 299, 380, 381).

Ms. Pratta, an Acthar sales representative specializing in neurology, was allegedly embroiled in this scheme during her employment with Quesctor and Mallinckrodt from 2010 until 2017. (*Id.* at ¶¶ 407, 410). For instance, Ms. Pratta allegedly hosted dinners with Key Opinion Leaders who promoted the use of Acthar for treatment of MS for 5-day pulse therapy. (*Id.* at ¶ 412). Specifically, on February 15, 2013, she hosted a dinner with Dr. Papa Rugino at a restaurant called Villa Amalfi in Toms River, New Jersey, and it is believed they promoted the use of Acthar for an unapproved 5-day dosing regimen to other doctors at the dinner. (*Id.* at ¶ 413). Ms. Pratta allegedly hosted another dinner with Dr. Papa-Rugino on March 15, 2013, and it is believed the same promotional activities occurred then as well. (*Id.* at ¶ 414).

### B. Procedural History

Plaintiff filed its initial complaint on November 22, 2019, in the New Jersey Superior Court. (Doc. No. 1, at ¶ 2). On January 6, 2020, Mallinckrodt timely removed. (*Id.* at ¶ 21). After several motions by the parties, including a motion to dismiss, Plaintiff filed an amended complaint on February 20, 2020. (Doc. No. 40). In response, Mallinckrodt and Express Scripts filed a joint motion to strike the amended complaint and Pratta filed her own motion to strike. (Doc. No. 41, 43). Mallinckrodt and Express Scripts then filed their motions to dismiss the amended complaint on March 5, 2020. (Doc. No. 49, 50). Pratta filed her motion to dismiss the amended complaint on March 11, 2020. (Doc. No. 55).

Plaintiff's amended complaint asserted seven claims against Defendants: (1) violation of the New Jersey Consumer Fraud Act; (2) violation of the New Jersey Antitrust Act; (3) violations of New Jersey RICO statute; (4) conspiracy to violate NJ RICO under NJSA 2C:41-2(d); (5) negligent misrepresentation; (6) civil conspiracy; and (7) unjust enrichment. (Doc. No. 40).

We dismissed Count I with prejudice, Count II was dismissed without prejudice except for Plaintiff's claim against Mallinckrodt for the anticompetitive acquisition of Synacthen, Counts III, IV, VI, and VI were also dismissed without prejudice, and Count VII was dismissed without prejudice except for Plaintiff's claim against Mallinckrodt for unjust enrichment. (Doc. No. 76, 77). Shortly after this Court's decision granting the Defendants' motions to dismiss in part, Defendant Lisa Pratta moved for sanctions under Rule 11 in the form of attorney's fees. (Doc. No. 80). Plaintiff opposes this motion. (Doc. No. 84).

## II.  LEGAL STANDARD

### A. Federal Rule of Civil Procedure 11

Rule 11 sanctions are "intended to be used only in 'exceptional' circumstances." *Martino v. United States*, No. CV 21-0037 (NLH), 2021 WL 1851852, at *2 (D.N.J. May 7, 2021). Rule 11(c)(1) provides that "if, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any . . . party that violated the rule or is responsible for the violation." Fed.R.Civ.P. 11(c)(1). The standard to be applied when evaluating conduct allegedly violative of Rule 11 is reasonableness under the circumstances. *Martin v. Brown*, 63 F.3d 1252, 1264 (3d Cir.1995). This is an objective standard and bad faith is not required. *Id.* Reasonableness in the context of Rule 11, is "an objective knowledge or belief at the time of the filing of the challenged paper that

the claim was well-grounded in law and fact." *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 289 (3d Cir.).

### B. 28 U.S.C. § 1927

28 U.S.C. § 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. The sanctions are intended to deter an attorney from intentionally and unnecessarily delaying judicial proceedings, and they are limited to the costs that result from such delay. *See Zuk*, 103 F.3d at 297. Although § 1927 provides a court with a mechanism for sanctioning vexatious and willful conduct, "courts should exercise [this sanctioning power] only in instances of a serious and studied disregard for the orderly process of justice." *Ford v. Temple Hosp.*, 790 F.2d 342, 347 (3d Cir.1986), quoting *Overnite Transp. Co. v. Chicago Industr. Tire Co.*, 697 F.2d 789, 795 (7th Cir.1983). The power to sanction under § 1927 necessarily "carries with it the potential for abuse, and therefore the statute should be construed narrowly and with great caution so as not to stifle the enthusiasm or chill the creativity that is the very lifeblood of the law." *Mone v. Commn'r of Intern. Revenue*, 774 F.2d 570, 574 (2d Cir.1985).

### III.   DISCUSSION[2]

We meant what we said when we found Plaintiff's allegations against Defendant Ms. Pratta to be "extremely conclusory." Nevertheless, and despite what Defendant may have inferred from

---

[2] Defendant raises many arguments in its reply brief that it did not raise in its initial brief. We decline to address them. *D'Alessandro v. Bugler Tobacco Co.*, No. CIV A 05-5051 JBS, 2007 WL 130798, at *2 (D.N.J. Jan. 12, 2007) (explaining the reason for not considering new arguments raised for the first time in a reply brief is self-evident: no sur-reply is permitted, so the opponent has no opportunity to respond).

this conclusion, this is not a case where exceptional circumstances are present such that sanctions in the form of attorney's fees are warranted.

### A. Inquiry into the Law[3]

Defendant Lisa Pratta requests that we impose sanctions on Plaintiff in the form of attorney's fees because his claims against her were frivolous. To support this contention, Defendant points to this Court's conclusion that Plaintiff's claims against Ms. Pratta were "extremely conclusory," and argues that this confirms how frivolous Plaintiff's claims were. Defendant also maintains that Plaintiff's allegations against Ms. Pratta amount to nothing more than recklessly including her in a collective fashion with all other corporate defendants and attributing their illegal conduct to her. This is the extent of Defendant's argument and it is unpersuasive.

First, Defendant offers no explanation for why Plaintiff's inquiry into the law is unreasonable or inadequate. Defendant does not contend that Plaintiff's claims were clearly barred by obvious and well settled defenses. Nor does she contend that Plaintiff's claims had been previously rejected by another court and were nonetheless pursued. *Magerman v. Mercer*, No. 17-CV-3490, 2018 WL 684806, at *3 (E.D. Pa. Feb. 2, 2018). Second, the substance of Defendant's argument is that sanctions should be imposed because Plaintiff's claims were dismissed. This is not a sufficient reason to impose sanctions. *TEGG Corp. v. Beckstrom Elec. Co.*, No. CIV.A. 08-435, 2008 WL 5216169, at *5 (W.D. Pa. Dec. 10, 2008). Third, Defendant's argument suffers from the same flaw that pervaded Plaintiff's claims—it is conclusory. Defendant, as the party moving for sanctions, bears the burden of proving that Plaintiff's claims are not warranted by

---

[3] Although not entirely clear, we construed Defendant's motion as asserting violations of both 11(b)(2) and (b)(3) given that Defendant cites to both of these provisions in her brief.

existing law. They have failed to explain how each one of Plaintiff's seven claims violates Rule 11(b)(2), and this Court will not perform their research or make their arguments for them.

What further befuddles the Court is that Defendant sets forth ten reasons why Plaintiff's claims are frivolous, and all of these reasons are based on the conclusion that Plaintiff did not have evidentiary support for any of his allegations. These reasons smack more of a Rule 11(b)(3) violation rather than a 11(b)(2) violation. Therefore, we will now determine whether there is any merit to Defendant's contention that Plaintiff's allegations did not have evidentiary support.

### B. Inquiry into the Facts

Defendant lists ten of Plaintiff's allegations for which he purportedly did not have evidence to support or would not likely have evidentiary support for after a reasonable opportunity for further investigation. Plaintiff contends that sanctions should not be imposed because it was reasonable to rely on Ms. Pratta's qui tam complaint, along with the many other pleadings arising out of this conduct, to frame Plaintiff's own complaint. Plaintiff also contends that its counsel engaged in much due diligence and amended the complaint to reflect the deficiencies pointed out by Ms. Pratta's motion to dismiss. Lastly, Plaintiff argues that the vast majority of its allegations were derived from the allegations in Ms. Pratta's qui tam complaint. Therefore, according to Plaintiff, this Court cannot find its claims frivolous because such a finding would effectively amount to a finding that Ms. Pratta's qui tam action was also frivolous.

Neither party is correct, but Defendant is more wrong. First, many, if not the majority, of Defendant's bases for frivolity are contradicted by Ms. Pratta's qui tam complaint and the Amended Complaint itself. For instance, Defendant contends that Plaintiff did not name one single key opinion leader in the Amended Complaint. This is wrong. Plaintiff alleges in paragraph 664 that Ms. Pratta "has assisted Mallinckrodt in selecting and approving physicians

to serve as KOLs, including Dr. Papa-Rugino." (Doc. No. 40 at ¶ 664). Plaintiff further alleged that Dr. Papa-Rugino worked in New Jersey. (*Id.* at ¶ 413).[4] Likewise, a cursory review of Ms. Pratta's qui tam complaint filed in the Eastern District of Pennsylvania undermines many of Defendant's claims. (See Civ. Action 12-0175, Doc. No. 40, Fourth Am. Compl. at ¶¶ 12, 13, 15, 18, 121, 128–134, 147, 153, 154, 158).[5] Indeed, it is hard to fathom how Defendant can characterize Plaintiff's allegations as knowingly false when many of them based on the information provided by Ms. Pratta in her qui tam complaint. In this respect, we agree with Plaintiff that to find his allegations to be knowingly false, we would also have to find the same of Ms. Pratta's qui tam complaint—something we will not do.

Moreover, Defendant cannot simply set forth numerous allegations in the Amended Complaint, baldly claim that Plaintiff has no factual support for them nor will have evidentiary support for them, and then expect this Court to grant a motion for sanctions when this is not even the relevant inquiry and the case has not moved past the motion to dismiss stage. Rather, the correct question to ask is whether Plaintiff conducted a reasonable pre-filing investigation as required by Rule 11(b)(3).[6] This requires the Court to consider several factors, including: (1) the amount of time available to the signer for conducting the factual and legal investigation; (2) the necessity of reliance on a client for the underlying factual information; (3) the plausibility of the legal position advocated; and (4) whether the case was referred to the signer by another member

---

[4] Defendant also makes much of the fact that there was no reasonable basis for Plaintiff to believe that she used the Acthar Start Form. We do not read the amended complaint as making such an assertion. In fact, Plaintiff specifically alleges at paragraph 411 that Ms. Pratta used "the Acthar referral form which was the document that initiated the sale of Acthar . . . [and] generated the Acthar Start Form."

[5] This citation to the complaint filed in the District Court for EDPA is not meant to be exhaustive. Nor should Plaintiff interpret this reference as somehow validating his previously dismissed claims. They were dismissed for a reason and should remain that way.

[6] This is also where Plaintiff's argument falters. Plaintiff claims that we cannot find a violation of Rule 11 without concluding that Ms. Pratta's qui tam complaint is frivolous. This is simply not true. We could find Plaintiff failed to conduct a reasonable pre-filing investigation and such a conclusion would not impugn the validity of Ms. Pratta's qui tam complaint.

of the Bar. *TEGG Corp. v. Beckstrom Elec. Co.*, No. CIV.A. 08-435, 2008 WL 5216169, at *3 (W.D. Pa. Dec. 10, 2008). However, we need not engage in such an analysis here given Defendant's failure to properly brief this issue.[7]

Defendant's motion for attorney's fees under 28 U.S.C. § 1927 is also denied as she has failed to persuasively explain how Plaintiff's attorney is pursuing a claim despite knowing it lacks merit. Nor has Defendant sufficiently demonstrated what applicable laws Plaintiff disregarded in pursuing his claims. In fact, the two cases cited by Defendant were decided much later in the stages of the litigation—after summary judgment and at trial—where there was concrete evidence to support a finding of bad faith. *Murphy v. Hous. Auth. & Urb. Redevelopment Agency of City of Atl. City*, 158 F. Supp. 2d 438, 450 (D.N.J. 2001) (concluding an attorney's continued pursuit of reverse discrimination claim was in bad faith when there was no evidence to support it at summary judgment and he asserted a per quod claim under the NJLAD even though he knew that such a claim was not cognizable); *Alphonso v. Pitney Bowes, Inc.*, 356 F. Supp. 2d 442, 454 (D.N.J. 2005) (finding bad faith where counsel manufactured a promotion claim when it did not exist, added an unauthorized expert the day before the final pretrial conference, and refused to drop a lost wages claim until mid-trial even though he knew it was patently frivolous). Such evidence is lacking here and therefore we do not find the necessary bad faith which warrants the imposition of attorney's fees.

## IV.   CONCLUSION

---

[7] We would remind Plaintiff that a filing attorney may not rely solely upon the inquiry conducted by another attorney because the Rule 11 duty of investigation is personal and non-delegable. *See Garr v. U.S. Healthcare*, 22 F.3d 1274, 1280 (3d Cir.1994); *Del Giudice v. S.A.C. Cap. Mgmt., LLC*, No. CIV. A. 06-1413 SRC, 2009 WL 424368, at *8 (D.N.J. Feb. 19, 2009) (noting "[o]ne attorney cannot rely solely on another's pre-filing investigation" by copying the complaint's factual allegations and failing to personally investigate the basis for those allegations).

For the reasons set forth above, Defendant's motion is denied. An appropriate order follows.


Dated: 6/22/2021                                              s/ Robert B. Kugler
                                                                                         ROBERT B. KUGLER
                                                                                         United States District Judge